The undersigned have reviewed the Award based upon the complete record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At the time of an alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly qualified self-insurer.
4. Plaintiff's average weekly wage may be determined from an Industrial Commission Form 22 Wage Chart provided by defendant.
5. 1982 medical reports from Dr. Farias, marked as Stipulated Documents 1, are stipulated into evidence.
6. A medical report from Dr. Allen Hayes, marked as Stipulated Document 2, is stipulated into evidence.
7. A 25 March 1987 report from Dr. William Credle, marked as Stipulated Document 3, is stipulated into evidence.
8. A 15 page report from Dr. William Credle dated 26 July 1990, marked as Stipulated Document 4, is stipulated into evidence.
9. The plant medical records contained within the plant personnel file, marked as Stipulated Document 5, is stipulated into evidence.
10. Respiratory questionnaires with the answer sheets from the pulmonary function tests, marked as Stipulated Documents 6, are stipulated into evidence.
11. A plant personnel file, marked as Stipulated Documents 7, is stipulated into evidence.
12. OSHA cotton dust levels from 1986 through 1989, marked as Stipulated Document 8, is stipulated into evidence.
* * * * * * * * * * *
RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of D. Allen Hayes, M.D., and William F. Credle, M.D., are OVERRULED.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff was born on 31 October 1946. Plaintiff graduated from high school, and thereafter began working in the cotton textile industry.
2. Plaintiff first worked in the cotton textile industry in 1967 at the Clarkton Mills Plant. Plaintiff remained so employed through 1970.
3. From 1970 through 1972, plaintiff worked at Westboro Cotton Mills. Plaintiff worked in the warping department, which was very dusty.
4. After being laid off from Westboro Cotton Mills in 1972, plaintiff worked for several years doing construction work and other jobs. In 1977, plaintiff was re-employed in the cotton textile industry. At that time, plaintiff began to work for defendant Mount Vernon Mills.
5. Plaintiff worked for defendant-employer from 1977 through 28 December 1989. Plaintiff worked in the winding room. While employed by defendant-employer, cotton, polyester blends and synthetics were run in plaintiff's work area. Plaintiff's job duties included fixing machines, labeling machines and cones, and bringing material from the spinning room. Plaintiff also conducted daily blow-off operations which worsened dust conditions.
6. Plaintiff began smoking cigarettes around 1965 or 1966. Plaintiff smoked approximately one to one and one-half packs per day through 1982. At that time, plaintiff cut his consumption to approximately one-half of a pack of cigarettes per day. Plaintiff quit smoking entirely in 1987, after being so advised by Dr. William Credle.
7. On 28 December 1989, plaintiff was laid off when defendant sold the mill at which he was employed. Plaintiff was not rehired since he was unable to pass a pre-employment pulmonary function test.
8. During plaintiff's employment with defendant-employer, plaintiff experienced exposure to cotton dust and was at an increased risk of developing certain types of chronic obstructive pulmonary disease, and of augmenting, aggravating or accelerating other chronic pulmonary disease which are due to factors not associated with cotton textile employment, than are members of the general public.
9. Plaintiff has a chronic obstructive pulmonary disease of moderate severity. Plaintiff also has a component of asthma. Plaintiff's impairment is twenty to thirty percent of the whole person.
10. Plaintiff's occupational exposures to cotton dust are not the cause of plaintiff's obstructive lung disease. In addition, plaintiff's occupational exposures did not contribute in a chronic fashion to his obstructive lung disease.
11. Plaintiff has some degree of asthma. Dust and lint exposure caused plaintiff to sustain some increased transient asthmatic symptoms, which worsened plaintiff's symptoms. These symptoms, however, were not anything other than transient asthmatic symptoms.
12. Plaintiff's obstructive lung disease is caused by his asthma and his substantial smoking history, and is not related to plaintiff's cotton dust exposure.
* * * * * * * * * * * Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff has no disease and no disability related to causes and conditions which are characteristic of, and peculiar to, the textile industry in which he worked. G.S. 97-53 (13).
2. Plaintiff is, therefore, entitled to no compensation under the North Carolina Workers' Compensation Act. G.S. 97-52; G.S. 97-53.
3. Plaintiff has argued on appeal that the Deputy Commissioner erred in failing to make findings of fact concerning certain pieces of evidence and testimony found in the record. While the Deputy Commissioner (and the Full Commission) has an obligation to review every piece of evidence and all testimony in the record at the time it is closed, it is not and never has been an obligation to make specific findings concerning each and every piece of evidence and testimony, whether or not it was believed, why it was not accepted as credible or convincing, etc. The duty as fact finder is to weigh all testimony and evidence presented, to determine the ultimate facts from the complete record, and then to make the ultimate findings of fact accordingly. The findings of fact must have a clear basis in the testimony and evidence presented and may be made even if there has been some contrary or inconsistent evidence presented. The findings of fact are thus sufficient in the case at hand and engender the above conclusions of law.
* * * * * * * * * * * Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This case is ORDERED REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1994.
 S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________ JAMES J. BOOKER COMMISSIONER
S/ _______________________ ROGER L. DILLARD DEPUTY COMMISSIONER
JHB/nwm 12/05/94